EDWARD KROCK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Krock v. Commissioner
Docket Nos. 6949-73, 980-74.
United States Tax Court
T.C. Memo 1986-580; 1986 Tax Ct. Memo LEXIS 26; 52 T.C.M. (CCH) 1146; T.C.M. (RIA) 86580; December 9, 1986. Jack H. Calechman, for the petitioner. Charles W. Maurer, Jr., for the respondent. DRENNEN
MEMORANDUM OPINION DENNEN, Judge: These cases were assigned to Special Trial Judge Stanley J. Goldberg pursuant to section 7456(d) (redesignated section 7443A(b) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat.    ) and Rule 180 et seq. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GOLDBERG, Special Trial Judge: These cases are before the Court on respondent's Motion for Summary Judgment, filed in each case on January 9, 1986, and petitioner's Motion For Leave To Withdraw Admissions, filed in both cases on May 2, 1986. In a notice of deficiency dated June 18, 1973, addressed *28 to Mr. Edward Krock and Mrs. Miriam Krock, respondent determined deficiencies in their joint Federal income tax and additions to tax under section 6653(b) for the taxable years 1964-1969 as follows: Addition to Tax
Taxable Year
Deficiency
Section 6653(b)
1965
$109,600.98
$54,800.49
1966
840,825.72
420,412.86
1967
811,227.64
405,613.82
1968
477,665.21
238,832.60
1969
44,878.36
22,439.18
In a second notice of deficiency dated December 13, 1973, addressed to Mr. Edward Krock and Mrs. Miriam Krock, respondent determined a deficiency in their joint Federal income tax and an addition to tax pursuant to section 6653(b) for the taxable year 1964 in the amounts of $8,068.11 and $4,034.06, respectively.The liability of Mrs. Miriam Krock for the taxable year 1964, however, was limited to the $8,068.11 deficiency in Federal income tax. Petitioner Edward Krock filed petitions solely on his behalf with this Court to redetermine the deficiencies and additions to tax determined by respondent in his notices of deficiency. Docket No. 6949-73 relates to the traxable years 1965-1969, and docket No. 980-74 relates to the taxable year 1964. [2] Petitioner's *29 legal residence was Brookfield, Massachusetts, when he filed his petitions with this Court. In the interest of clarity, it is necessary to set forth preliminarily the prolonged history of these cases. Background
These cases have been at issue since petitioner filed his reply in docket No. 6949-73 on April 24, 1974, and his reply in docket No. 980-74 on April 16, 1974. Rule 38. These cases were first set for trial at our trial session beginning March 7, 1983, in Boston, Massachusetts. The trial of these cases began on March 11, 1983, and at that time, respondent orally moved for the entry of a default judgment against petitioner on the ground that he was a "fugitive from justice." Testimony was heard and the Court requested the parties to file simultaneous briefs on or before April 25, 1983, which date was subsequently extended to May 20, 1983. *30 After carefully reviewing the briefs and transcript and considering the parties' contentions, we denied respondent's motion in our Order dated September 20, 1983. These cases were again set for trial on the March 19, 1984, trial session in Boston, Massachusetts. The parties filed a Joint Motion To Continue on March 2, 1984, which we granted on March 6, 1984. In the course of preparing these cases for trial, respondent served petitioner with a request for admissions and attached exhibits by mail on June 28, 1985.[3] Respondent's request for admissions was filed with the Court on July 5, 1985, pursuant to Rule 90. Petitioner was required to serve responses to the request for admissions within 30 days after service, Rule 90(c), or file a motion within this 30-day period to extend the time to respond to the request for admissions. . Because the thirtieth calendar day for responding was Sunday, July 28, 1985, petitioner's responses were due to be filed no later than Monday, July 29, 1985. Rule 25(a). Petitioner did not file a motion to extend the time for responding to the request for admissions, nor did he respond to *31 the request for admissions within the time provided by our Rules. [4]
On January 9, 1986, respondent filed a Motion For Summary Judgment pursuant to Rule 121 in each case based upon petitioner's deemed admissions. The Court notified the parties that respondent's motions were *32 calendared for hearing on February 19, 1986, in Washington, D.C. The cases were duly called at the Motions Session on the designated day. Counsel for respondent appeared and was heard. There was no appearance by or on behalf of petitioner. Mr. Calechman, petitioner's counsel of record, did not appear and did not file a Rule 50(c) statement in lieu of an appearance. However, on February 18, 1986, the day before the hearing on respondent's motion, the following documents pertaining to the above docketed cases were received from petitioner's counsel: (1) Executions of Documents (Handicapped Persons Act 1970), Commonwealth of the Bahamas, and attached verifications; (2) Petitioner's Responses To Respondent's First Interrogatories (docket No. 980-74); (3) Petitioner's Answers And Objections To Respondent's First Interrogatories (docket No. 6949-73); (4) Petitioner's Responses To Respondent's First Request For Production of Documents (docket Nos. 6949-73, 980-74); and (5) Petitioner's Responses To Respsondent's First Request For Admissions (docket Nos. 6949-73, 980-74). By Order dated February 27, 1986, we ordered the Clerk of the Court to return unfiled to petitioner's counsel all *33 of the heretofore mentioned documents. In our Order we informed petitioner that the admissions set forth in respondent's request for admissions served upon petitioner's counsel on June 28, 1985 and filed with the Court on July 5, 1985, have been deemed admitted under our holding in , affd. , and Rules 90(b) and (c). [5] On May 2, 1986, petitioner filed a Motion For Leave To Withdraw Admissions in both cases pursuant to Rule 90(e) [6] together with his responses to respondent's request for admissions attached as an exhibit. The issues for our decision are whether petitioner may withdraw the deemed admissins pursuant to Rule 90(f), and whether respondent is entitled to summary judgment in these cases. *34 We will first rule on petitioner's motion to withdraw the deemed admissions. We will then rule on respondent's motions for summary judgment. Motion For Leave To Withdraw Admissions
Under Rule 90(c), each request for admission is deemed admitted unless an answer or an objection is served on the requesting party "within 30 days after service of the request * * *." The Court, in its discretion, may allow a party more than 30 days to respond. Rules 90(c), 25(c). However, a motion to extend the time to file responses must be made prior to the expiration of 30 days following service of the request. . If the time to file responses to the request for admissions is not extended and no answers or objections to the request for admissions are filed within the 30-day time period for responding, each request is deemed automatically admitted at the end of the 30-day response period without the entry of any order by the Court. . In the instant case, respondent's request for admissions was served on petitioner on June 28, 1985. [7] Absent an extension of the *35 30-day response period, petitioner was required to respond no later than July 29, 1985, by answering or objecting to the request for admissions. The time to file responses to respondent's request for admissions was not extended by order of this Court and petitioner did not answer to object to respondent's request for admissions by July 29, 1985. Each request contained therein was therefore deemed admitted on July 30, 1985. [8]; , affd. ; Rule 90(c). *36 An admission may be withdrawn (1) if the withdrawal would subserve the presentation of the merits of the case and (2) if the party obtaining the admission "fails to satisfy the Court that the withdrawal * * * will prejudice him in prosecuting his case or defense on the merits." Rule 90(f). These cases have been at issue since April 1974. Petitioner has had ample opportunity during the last 12 years to move forward with this matter, but he has not. Respondent decided to move ahead by utilizing both discovery and a request for admissions. As already demonstreated, petitioner has flagrantly violated this Court's Rules by ignoring all of respondent's discovery efforts. [9] Two reasonable inferences may be justifiably drawn from this course of conduct. The first is that the facts, if disclosed, would not support petitioner's position on the merits. The second is that petitioner cannot meet his burden of proof regarding the underlying deficiencies. It is therefore implausible to assume that the withdrawal of the deemed admissions would subserve the presentation of the merits of the case -- the first criterion of Rule 90(f). Furthermore, *37 petitioner stated in his motion that he was served with "a massive and voluminous set of interrogatories, requests for production of documents, and requests for admission." He goes on and says that these requests were "burdensome and erroneous". If this is true, one can only wonder why petitioner did not file timely motions requesting additional time to respond to the request for admissions, the answer interrogatories, and to produce documents. Our Rules specifically provide for such motions. Rules 90(c), 71(c), and 72(b). Petitioner's counsel is admitted to practice before our Court and he is presumed to know our Rules. His failure to make timely motions is therefore a deliberate act on his part not to comply with our Rules by ignoring them. As to the second criterion of Rule 90(f), it has been convincingly demonstrated that the withdrawal of the admissions will prejudice respondent in presenting his case on the merits. In , we stated that "[a] party will be prejudiced by the withdrawal of admissions if he has relied on them and will suffer delay, added expense, and additional effort because of the withdrawal." *38 Here, respondent has relied in good faith on the binding effect of the deemed admissions to prepare his motion for summary judgment. Respondent has taken the initiative and made good faith efforts to comply with the Court's Rules regarding preparation for trial.Petitioner, on the other hand, is attempting to thwart those efforts. Petitioner made no suggestion prior to respondent's filing his motions for summary judgment that petitioner intended to respond to respondent's request for admissions or to respondent's discovery. In fact, petitioner never filed an objection to respondent's motions for summary judgment, nor did petitioner or his counsel appear before this Court to oppose respondent's motions for summary judgment. Petitioner's motion for leave to withdraw admissions was filed more than nine months after the admissions were deemed admitted and nearly four months after respondent filed his motion for summary judgment. See (motion by taxpayers to withdraw admissions, filed two months after they were deemed admitted and one month after Commissioner's summary judgment motion was filed, denied).Thus, because respondent relied *39 in good faith on petitioner's failure to reply or object to the requested admissions, withdrawal of the deemed admissions would result in undue prejudice to respondent's presentation of these cases. Moreover, withdrawal of the admissions would cause further delay of these cases, which, when measured against any conceivable benchmark, have already been unduly prolonged. We believe petitioner will pursue dilatory methods if respondent is required to prove again at trial the facts now deemed to be admitted. Further, we are convinced that petitioner will never prosecute these cases. Accordingly, as we found in , when "we weight our interest in diligence of litigation and the prejudice to respondent against petitioners' desire for a trial on the merits, the scales fall far on the side of respondent." We have carefully read the grounds supporting petitioner's request in his motion for leave to withdraw admissions and find none of them persuasive. Consequently, petitioner's motion to withdraw deemed admissions will be denied. Findings of Fact
Based on the facts *40 deemed admitted pursuant to Rule 90(c), [10] we find the following: Statute of Limitations
1964
Petitioner's joint U.S. Individual Income Tax Return for the taxable year 1964 was filed on or about April 15, 1965. Prior to the expiration of the 3-year statute of limitations on assessment provided by section 6501(a) and in accordance with section 6501(c)(4), petitioner, on his own behalf and in his capacity as agent for Miriam Krock, and respondent executed a Form 872 effective April 9, 1968, extending the period of limitations for assessment of the 1964 tax to December 31, 1968. The statutory period for assessment for 1964 was further extended to December 31, 1973, by subsequent Forms 872 timely executed in compliance with section 6501(c)(4) by respondent and by petitioner acting on his own behalf and in his capacity as agent for Miriam Krock. The notice of deficiency for the taxable year 1964 was timely mailed to petitioner on December 13, 1973. 1965
Petitioner's joint U.S. Individual Income Tax Return for the taxable year 1965 *41 was filed on or about April 15, 1966. Prior to the expiration of the three-year statute of limitations on assessment provided by section 6501(a) and in accordance with section 6501(c)(4), petitioner, on his own behalf and in his capacity as agent for Miriam Krock, and respondent executed a Form 872 effective February 14, 1969, extending the period of limitations for assessment of the 1965 tax to December 31, 1969. The statutory period for assessment for 1965 was further extended to December 31, 1973, by subsequent Forms 872 timely executed in compliance with section 6501(c)(4) by respondent and by petitioner acting on his own behalf and in his capacity as agent for Miriam Krock. The notice of deficiency for the taxable year 1965 was timely mailed to petitioner on June 18, 1973. 1966
Petitioner's joint U.S. Individual Income Tax Return for the taxable year 1966 was filed on or about April 15, 1967. Prior to the expiration of the three-year statute of limitations on assessment provided by section 6501(a) and in accordance with section 6501(c)(4), petitioner, on his own behalf and in his capacity as agent for Miriam Krock, and respondent executed a Form 872 effective November 12, 1969, extending *42 the period of limitations for assessment of the 1966 tax to December 31, 1970. The statutory period for assessment for 1966 was further extended to December 31, 1973, by subsequent Forms 872 timely executed in compliance with section 6501(c)(4) by respondent and by petitioner acting on his own behalf and in his capacity as agent for Miriam Krock. The notice of deficiency for the taxable year 1966 was timely mailed to petitioner on June 18, 1973. 1967, 1968
Petitioner's joint U.S. Individual Income Tax Returns for the taxable years 1967 and 1968 were untimely filed on April 30, 1970. Prior to expiration of the 3-year statute of limitations on assessment provided by section 6501(a) and in accordance with section 6501(c)(4), petitioner, on his own behalf and in his capacity as agent for Miriam Krock, and respondent executed a Form 872 effective November 14, 1972, extending the period of limitations for assessment of the 1967 tax and the 1968 tax to December 31, 1973.The notice of deficiency for the taxable years 1967 and 1968 was timely mailed to petitioner on June 18, 1973. 1969
Petitioner's joint U.S. Individual Income Tax Return for the taxable year 1969 was filed *43 on April 29, 1970. Prior to the expiration of the three-year statute of limitations on assessment, provided by section 6501(a) and in accordance with section 6501(c)(4), petitioner, on his own behalf and in his capacity as agent for Miriam Krock, and respondent executed a Form 872 effective November 14, 1972, extending the period of limitations for assessment of the 1969 tax to December 31, 1973. The notice of deficiency for the taxable year 1969 was timely mailed to petitioner on June 18, 1973. Interest Income
Petitioner failed to report interest income from the following sources on his joint U.S. Individual Income Tax Return filed for the taxable years 1964 through 1969: 1964
1965
1966
Worcester County
National Bank
$60,621.55
$90,843.20
$60,558.46
U.S. Income Tax Refund
1,923.77
Total
$62,545.32
$90,843.20
$60,558.46
1967
1968
1969
Worcester County
National Bank
$ 56,287.69
$45,838.49
Franklin National Bank
New York
43,298.61
8,975.69
$9,927.31
New England Merchant's
National Bank, Boston
26,437.95
38,624.47
Total
$126,024.25
$93,438.65
$9,927.31
Total Omitted
Interest Income
Taxable
Year
Amount
1964
$62,545.32
1965
90,843.20
1966
60,558.46
1967
126,024.25
1968
93,438.65
1969
9,927.31
*44 Commission Expense Deductions
Petitioner claimed commission expense deductions for the taxable years 1964 through 1969 on Schedule C "Profit (or Loss) From Business or Profession" attached to his joint U.S. Individual Tax Return for these years in the following amounts shown below: Taxable
Year
Amount
1964
$60,000.00
1965
48,000.00
1966
60,000.00
1967
106,500.00
1968
66,000.00
1969
60,000.00
Petitioner did not incur any expense for commissions in the taxable years 1964 through 1969, and is not entitled to any commission expense deduction claimed for these years. Partnership Adjustments
Petitioner and two other investors formed the Ridgelea-Fort Worth Venture partnership in 1961 to purchase a shopping center in Fort Worth, Texas.Petitioner initially owned a one-sixth partnership interest in this venture. This increased to a 50 percent partnership interest on January 1, 1965. On August 1, 1966, petitioner sold his partnership interest in the Ridgelea-Fort Worth Venture. The partnership maintained its books and records on the cash-basis using a calendar year and reported net losses for each of the years 1964, 1965, and 1966. Petitioner *45 claimed a deduction for his distributive share of the Ridgelea-Fort Worth Venture partnership losses on his 1964, 1965, and 1966 joint Federal income tax returns. The partnership claimed depreciation deductions for the years 1964, 1965 and 1966, in the amounts of $119,594.00, $119,594.00 and $61,771.50, respectively, for buildings, mechanical and electrical and paving. The amounts claimed by the partnership as deductions for depreciation for the years 1964, 1965, and 1966 do not constitute a reasonable allowance for depreciation. The partnership's correct allowances for depreciation of the partnership assets for the years 1964, 1965, and 1966 are $54,635.13, $54,635.13, and $31,870.49. The depreciation deductions claimed understated partnership income by $64,958.87 in both 1964 and 1965 and $29,901.01 in 1966. In addition to the claimed depreciation deductions, the partnership claimed deductions for the years 1964, 1965, and 1966 for amortization of leaseholds in the amounts of $68,272.60, $68,272.60, and $39,825.68, respectively. The partnership did not own any leasehold assets during the years 1964 through 1966 and therefore is not entitled to claim any deductions for amortization *46 of such an asset. Partnership income was understated during the years 1964, 1965, and 1966 by the amount of the leasehold amortization deduction claimed for each year. The partnership claimed deductions for real estate taxes for the years 1964 and 1966 in the amounts of $46,027.32 and $29,915.91, respectively. The actual real estate taxes paid by the partnership during the year 1964 were $521.88. No real estate taxes were paid by the partnership during the year 1966. The real estate tax deductions claimed by the partnership understated partnership income by $45,505.44 in 1964 and $29,915.91 in 1966. The partnership reported net losses for each of the years 1964, 1965, and 1966. The losses reported by the partnership and the distributive share of the partnership loss petitioner reported are as follows: 1964
1965
1966
Partnership Income (or Loss)
$ (159,981.01)
$ (232,015.28)
$ (79,441.27)
Petitioner's Distributive
Share (1/6 for 1964; 1/2 for
1965 and 1966)
$ (26,663.55)
$ (116,007.64)
$ (39,720.63)
The correct partnership income or loss, petitioner's correct distributive share of the partnership income or loss, and the understatement *47 of petitioner's distributive share of partnership income for the years 1964, 1965, and 1966 are as follows: 1964
1965
1966
Partnership Income (or Loss)
as Reported
$ (159,981.01)
$ (232,015.28)
$ (79,441.27)
Disallowed Deductions: Depreciation
64,958.87 64,958.87 29,901.01 Amortization
68,272.60 68,272.60 39,825.68 Real Estate Taxes
45,505.44 29,915.91 Corrected Partnership
Income (or Loss)
$ 18,755.90 $ (98,783.81)
$ 20,201.33 Petitioner's Corrected
Distributive Share (1/6 for
1964; 1/2 for 1965 and 1966)
$ 3,125.93 $ (49,391.87)
$ 10,100.67 Less, Petitioner's
Distributive Share
As Reported
$ (26,663.55)
$ (116,007.64)
$ (39,720.63)
Understatement of Petitioner's
Partnership Income
$ 29,789.48 $ 66,615.77 $ 49,821.30 Gains and Losses
On Schedule D attached to his 1964 joint Federal income tax return, petitioner reported a $51.61 net short-term capital loss from the sale or exchange of securities during the taxable year that, when combined with the $39,301.48 net short-term capital loss carryover from 1963, yielded a $39,953.09 net short-term capital loss for 1964. Petitioner *48 also reported a $35.70 net long-term capital loss from the sale or exchange of securities during the taxable year. Petitioner did not claim the $1,000.00 maximum capital loss deduction allowable under section 1211(b) on his return for 1964. He is entitled to this deduction and accordingly, petitioner's taxable income for 1964 is reduced $1,000.00. This deduction reduces petitioner's net short-term capital loss for 1964 to $38,953.09, all of which is a net short-term capital loss carryover to 1965. Petitioner's $35.70 net long-term capital loss is a carryover to 1965. 1965
On Schedule D attached to his 1965 joint Federal income tax return, petitioner reported a $28,455.68 short-term capital gain and a $331.56 long-term capital loss from the sale of securities. Petitioner offset the short-term capital gain against a net short-term capital loss carryover from 1964 and reported a net short-term capital loss for 1965. In addition to the sales or exchanges reported on his return, petitioner realized short-term capital gains from the following sales or exchanges of property during the taxable year 1965 that he failed to report: Date
Date
Gross
Cost or
Gain (or
Kind of Property
Acquired
Sold
Sales Price
Other Basis
Loss)
15,500 shares Telepro
12/65
12/65
$11,392.66
$6,510.00
$ 4,882.66
Industries, Inc.
15,500 Telepro Indus-
tries, Inc., deben-
tures
12/65
12/65
$18,106.89
$9,300.00
$ 8,806.89
Total Gains
$13,689.55
*49 Petitioner's correct gains from sales or exchanges of property for the taxable year 1965 are $2,824.88, computed as follows: Net Long-Term Loss as Reported
on Return
($331.56)
Net Short-Term Gains as Reported
on Return
$28,455.68 Plus, Unreported Net Short-Term Gains
13,689.55 Plus, Long-Term Loss Carryover
from 1964
($ 35.70)
Short-Term Loss Carryover
from 1964
($38,953.09)
Net Long-Term Loss
($367.26)
Net Short-Term Gain
$ 3,192.14 Less, Net Long-Term Loss
($367.26)
Net Capital Gain
$ 2,824.88 Net Gain as Reported on Return
Adjustment (Increase) to Income
$ 2,824.88 1966
On Schedule D attached to his joint 1966 Federal income tax return, petitioner reported gains and losses from the sale or exchange of securities, from the disposition of his Ridgelea-Fort Worth Venture partnership interest and from the disposition of his interest in Vita-Var, a leasehold of machinery and equipment that is section 1245 property. Petitioner reported the following gains and losses on Schedule D for the 1966 taxable year: Short-term capital loss
($3,227.15)
(securities transactions)
Long-term capital gain
$322,312.33 (securities transactions and
disposition of Ridgelea-
Fort Worth Venture
partnership interest)
Long-term capital gain
$266,419.24 (disposition of Vita-Var
leasehold interest)
Ordinary gain
$24,864.94 (depreciation recapture-
Vita-Var disposition)
Ordinary gain
$19,375.79 (depreciation recapture-
Ridgelea-Fort Worth Venture
partnership interest disposition)
*50 Petitioner reported a $331,061.15 net gain. For the 1966 taxable year, petitioner failed to report stock sales yielding short-term capital losses. In addition, petitioner understated the cost of securities and incorrectly listed their purchase dates to report gain from sales as long-term capital gain when in fact, the sales resulted in short-term capital losses. Petitioner's correct net short-term capital loss sustained during the taxable year 1966 from securities transactions is $86,617.87 instead of the $3,227.15 short-term capital loss reported. This short-term capital loss, reduced by the $1,000.00 capital loss deduction allowed by section 1211(b), results in an $85,617.87 short-term capital loss carryover to 1967. Petitioner sustained a net long-term capital loss during the taxable year 1966 in the amount of $186,482.53 from securities transactions and the disposition of his Ridgelea-Fort Worth Venture partnership interest. [11] Petitioner realized a $69,760.83 loss on the disposition of his Ridgelea-Fort Worth Venture partnership interest instead of the $76,465.73 long-term capital gain and the $19,375.79 ordinary gain from this transaction he reported on Schedule D. *51 On Schedule D, petitioner reported a $291,284.19 gain from the sale of his Vita-Var leasehold interest. Petitioner reported $24,864.94 of this gain as ordinary income and $266,419.24 as long-term capital gain. At the time petitioner disposed of his Vita-Var leasehold interest, the depreciation deductions allowable since petitioner's acquisition of the leasehold interest exceeded his gain. Therefore, all of petitioner's gain on the Vita-Var leasehold interest disposition is ordinary gain and should have been reported as such. Petitioner's net gain from the sales or exchanges of property for 1966 is $290,284.19, the ordinary gain from the disposition of the Vita-Var leasehold interest reduced by the $1,000.00 maximum capital loss allowable under section 1211(b). The adjustments to petitioner's reported net gains from the sale or exchange of property for 1966 result in a $40,776.96 reduction in petitioner's 1966 taxable income. 1967
On Schedule D attached to his joint 1967 Federal income tax return, *52 petitioner reported a $46,942.80 net long-term capital loss from the sale of United States Treasury Bonds. This was the sole sale or exchange of property petitioner reported for the 1967 taxable year. In fact, petitioner engaged in some 37 additional sales transactions with a total sales price of $1,613,871.75 during the 1967 taxable year. Gains and losses from these transactions involving the sale of municipal bonds and stock were not reported by petitioner on his 1967 joint Federal income tax return. During the 1967 taxable year, petitioner sustained a $56,769.03 net long-term capital loss instead of the $46,942.80 long-term capital loss that he reported. The actual long-term capital loss he sustained in 1967, plus the $186,482.53 long-term loss carryover from 1966, yield a net long-term capital loss carryover to 1968 in the amount of $243,251.56. Petitioner also sustained a $14,973.40 net short-term capital gain from the sale of exchange of property during 1967 that he failed to report on Schedule D. This gain is offset by petitioner's short-term capital loss carryover from 1966, and yields a net short-term capital loss of $70,644.47 for 1967. This short-term capital loss *53 is reduced by the $1,000.00 capital loss deduction allowed by section 1211(b) and results in a $69,644.47 short-term capital loss carryover to 1968. Petitioner is entitled to a $1,000.00 capital loss deduction for 1967 because his sales or exchanges of property produce a net capital loss for that year. Petitioner did not claim this deduction on his 1967 joint Federal income tax return. Accordingly, petitioner's 1967 taxable income is reduced $1,000.00. 1968
On Schedule D attached to his 1968 joint Federal income tax return, petitioner reported gains and losses resulting from the sale of municipal bonds and from the sale of his interest in the J. Bancroft leasehold, section 1245 property. Petitioner reported a net ordinary gain of $68,838.08 and a $116,726.42 net long-term capital loss for 1968. The gains and losses petitioner reported from the sale or exchange of property result from petitioner's failure to report short-term capital gain for 1968, his incorrect characterization of gain from the disposition of the J. Bancroft leasehold, section 1245 property, and his claiming an incorrect long-term capital loss carryover from 1967. On Schedule D, petitioner reported a *54 $452,477.46 gain from the sale of his J. Bancroft leasehold interest. Petitioner reported $68,838.08 of this gain as ordinary income and $383,639.38 as long-term capital gain. The J. Bancroft leasehold is section 1245 property. At the time petitioner disposed of his interest in the leasehold, the depreciation deductions allowable since petitioner's acquisition of the leasehold interest exceeded petitioner's gain. Therefore, all of petitioner's gain on the J. Bancroft leasehold interest disposition is ordinary income and should have been reported as such. Petitioner's reported $116,726.42 net long-term capital loss for 1968 is incorrect. This net long-term capital loss reported by petitioner resulted from a $454,423.00 long-term capital loss sustained in 1968 from reported municipal bond sales, petitioner's incorrect characterization of $383,639.38 of gain from the sale of the J. Bancroft leasehold as long-term capital gain, and his claiming an incorrect long-term capital loss carryover from 1967 of $45,942.80. Petitioner's correct 1968 long-term capital loss is $697,674.56, the sum of the $454,423.00 loss he sustained in 1968 plus the $243,251.56 correct net long-term capital *55 loss carryover from 1967. All of the $697,674.56 loss is a carryover to 1969. Petitioner did not report $3,399.45 in net short-term capital gains resulting from 32 sales of municipal bonds with a total sales price of $1,055,134.10. These gains are offset by the short-term capital loss carryover from 1967, thus producing a net short-term capital loss of $66,245.02 for 1968. Petitioner is entitled to the $1,000.00 capital loss deduction allowed by section 1211(b) because he sustained a net capital loss in 1968. This loss deduction reduces petitioner's 1968 short-term capital loss and results in a short-term capital loss carryover to 1969 of $65,245.02. Because petitioner reported only $68,838.08 of the J. Bancroft sales proceeds as ordinary income, his 1968 taxable income is increased by $382,639.38, the amount he incorrectly reported as long-term capital gain, reduced by the $1,000.00 maximum capital loss allowable. 1969
On Schedule D attached to his 1969 joint Federal income tax return, petitioner reported a $67,062.95 net long-term capital loss. Petitioner did not sustain the $67,062.95 net long-term capital loss as reported. Petitioner erroneously characterized gain *56 from the sale of a section 1245 leasehold interest as long-term capital gain and claimed an incorrect long-term capital loss carryover from 1968 to produce the erroneous net long-term capital loss reported for 1969. Petitioner sustained a $9,986.53 net long-term capital loss from the sale of stocks and United States Treasury Bonds in 1969. This loss, combined with the $697,674.56 correct net long-term capital loss carryover from 1968, results in a $707,661.09 net long-term capital loss carryover to 1970. [12]
Petitioner's sale of a leasehold interest in 1969 yielded a $59,650.00 gain, all of which petitioner incorrectly characterized as long-term capital gain and offset against the 1969 long-term capital loss and 1968 net long-term capital loss carryover. Because depreciation deductions exceeding the gain on the disposition of petitioner's section 1245 leasehold interest had been allowed at the time petitioner sold his leasehold interest, all of petitioner's gain on the sale of his leasehold interest should have been reported as ordinary income. The $65,245.02 short-term *57 capital loss carryover from 1968 results in a short-term capital loss for 1969 in this amount. Petitioner is entitled to a $1,000.00 capital loss deduction under section 1211(b) because he sustained a net capital loss in 1969. This loss deduction reduces petitioner's 1969 short-term capital loss and results in a $64,245.02 short-term capital loss carryover to 1970. Petitioner's correct gain for 1969 is $58,650.00, the $59,650.00 gain resulting from the disposition of his section 1245 leasehold interest reduced by the $1,000.00 allowable capital loss deduction for 1969. Because petitioner did not report this gain for 1969, his 1969 taxable income is increased $58,650.00. Net Operating Losses
1965
Petitioner claimed a $101,517.69 net operating loss deduction on his 1965 joint Federal income tax return. This claimed deduction consisted of net operating loss carryovers from 1963 in the amount of $21,450.92 and from 1964 in the amount of $80,066.77. As a result of adjustments to the 1963 and 1964 taxable years, no net operating losses were incurred by petitioner in those years to be carried forward to 1965. Accordingly, petitioner may not claim a net operating loss *58 deduction for 1965. 1966
Petitioner claimed a $103,171.17 net operating loss deduction on his 1966 joint Federal income tax return. This claimed deduction consisted of net operating loss carryovers from 1963, 1964, and 1965 in the amounts of $21,450.92, $80,066.77, and $1,653.48, respectively. As a result of adjustments to the 1963, 1964, and 1965 taxable years, no net operating losses were incurred by petitioner in those years to be carried forward to 1966. Accordingly, petitioner may not claim a net operating loss deduction for 1966. 1967
Petitioner claimed a $518,800.59 net operating loss deduction on his 1967 joint Federal income tax return.This claimed deduction consisted of a net operating loss carryback from 1969. As a result of adjustments to the 1969 taxable year, no net operating loss was incurred by petitioner in that year to be carried back to 1967. Accordingly, petitioner may not claim a net operating loss deduction for 1967. 1968
Petitioner claimed a $123,326.69 net operating loss deduction on his 1968 joint Federal income tax return. This claimed deduction consisted of a net operating loss carryback from 1969. As a result of adjustments to *59 the 1969 taxable year, no net operating loss was incurred by petitioner in that year to be carried back to 1968. Accordingly, petitioner may not claim a net operating loss deduction for 1968. Legal and Professional Fees and Judgments
1968
On his 1968 joint Federal income tax return, petitioner deducted $216,897.85 on Schedule C for "Legal and Professional Fees and Judgments." During the 1968 taxable year, petitioner paid legal fees of $75,000.00. Petitioner did not incur any legal or professional fees or judgments during the 1968 taxable year in excess of $75,000.00. Accordingly, petitioner's 1968 deduction for legal or professional fees or judgments is limited to $75,000.00. 1969
On his 1969 Federal income tax return, petitioner claimed a deduction on Schedule C for "Legal and Professional Fees and Judgments" in the amount of $800,454.65. On June 30, 1969, petitioner delivered to the Worcester County National Bank a certificate of deposit in the amount of $750,000.00, as security for his agreement to indemnify the bank for any loss, damage or expense incurred by the bank arising out of an action involving petitioner and Fifth Avenue Coach Lines, Inc. The *60 certificate of deposit was delivered to the bank as security for loss, damage, or expense which might be incurred in the future, and not as payment for any legal or professional fees or judgments which had already been incurred. Petitioner did not incur or pay and legal or professional fees or judgments during the taxable year 1969. Unreported Stock Dividend Income
During the taxable year 1967, petitioner received certain shares of stock as a dividend from Fifth Avenue Coach Lines, Inc., with a fair market value of $5,965.52, which he failed to report on his 1967 joint Federal income tax return. Unreported Loan Premium Income
During the taxable year 1966, petitioner received from Fifth Avenue Coach Lines, Inc., a "finder's fee" or premium in the amount of $164,337.50 for making a loan to the corporation, which he failed to report on his 1966 joint Federal income tax return. Diverted Income
Edward Krock Industries, Inc., was organized February 6, 1950, for the purpose of buying and liquidating industrial plants. From the date of its organization through May 1, 1972, petitioner owned or controlled all of the corporation's stock. Edward Krock Industries, Inc. *61 operated on a February 1 - January 31 fiscal year. The corporation claimed losses for the fiscal years ending January 31, 1961, through January 31, 1964. These losses resulted in a net operating loss carryover of $183,877.13 to the corporation's fiscal year ending January 31, 1965. During the fiscal years ending January 31, 1965 through January 31, 1970, the only income reported by the corporation consisted of commissions purportedly paid to the corporation by petitioner, and various items of income paid to petitioner in his individual capacity as compensation for services or reimbursement for alleged expenses, and which petitioner diverted to the corporation and did not himself report. As a result of the net operating loss carryover and deductions claimed by the corporation for various alleged expenses, the corporation incurred income tax liability only for the fiscal year ending January 31, 1968. The corporation reported no income tax liability for the taxable years ending January 31, 1965, 1966, 1967, 1969, and 1970. Petitioner did not pay commissions to the corporation during the fiscal years ending January 31, 1965 through January 31, 1970, nor did the corporation perform *62 any services, furnish any goods, or otherwise earn any right to receive commissions from petitioner. [13]
Petitioner diverted the following amounts of his income for his taxable years 1964 through 1967 to Edward Krock Industries, Inc.: Taxable
Year
Amount
1964
$13,266.75
1965
25,238.00
1966
76,841.50
1967
89,010.11
The items of income comprising these totals were petitioner's income and should have been reported by him on his joint Federal income tax returns filed for the taxable years 1964 through 1967. None of this income is the corporation's income. The various items of income were earned by and paid to petitioner in his individual capacity and not as an agent of the corporation. The corporation did not perform any services, furnish any goods, or otherwise earn any right to receive the items of income. Unreported Income
The following income was not reported by petitioner during the taxable years 1965 through 1968, nor was it diverted to Edward *63 Krock Industries, Inc.: Taxable
Year
Amount
1965
$53,462.73
1966
125,228.38
1967
562,503.36
1968
23,500.00
Unreported Income - Exercise of Stock Options
For the taxable year 1966, petitioner realized $655,344.86 in income by exercising options to purchase the stock of Defiance Industries, Inc. and Telepro Industries, Inc. For the taxable year 1967, petitioner realized $82,614.24 in income by exercising options to purchase the stock of Defiance Industries, Inc. Petitioner did not report any of the income he realized upon his exercise of stock options during the taxable years 1966 and 1967. Accordingly, petitioner's taxable income is increased $655,344.86 for the taxable year 1966 and $82,614.24 for the taxable year 1967. Understatement of Petitioner's Taxable Income 1964-1969
The amount of petitioner's correct taxable income and the understatement of taxable income for the taxable years 1964 through 1969 are as follows: Taxable
Correct Taxable
Reported on
Understatement of
Year
Income
Return
Taxable Income
1964
$80,690.01
($84,390.54)
$165,080.55
1965
285,935.20
(105,571.17)
391,506.37
1966
1,222,618.89
( 31,907.33)
1,254,526.22
1967
1,200,353.78
(125,726.69)
1,326,080.47
1968
676,228.18
(158,935.13)
835,163.31
1969
92,697.52
(842,234.43)
934,931.95
*64 Understatement of Petitioner's Income Tax Liability 1964-1969
Petitioner's correct income tax liability, the income tax liability reported on his return, and the understatement of income tax liability for the taxable years 1964 through 1969, are as follows: Taxable
Correct Taxable
Reported on
Understatement of
Year
Income Tax Liability
Return
Tax Liability
1964
$8,068.11
$8,068.11
1965
109,600.98
109,600.98
1966
840,825.72
840,825.72
1967
811,227.64
811,227.64
1968
477,665.21
477,665.21
1969
44,878.36
44,878.36
Fraud
Petitioner failed to maintain, or to submit for examination by respondent, complete and adequate books of account and records of his income-producing activities for each of the taxable years 1964, 1965, 1966, 1967, 1968, and 1969 as required by the applicable provisions of the Internal Revenue Code and the Treasury regulations thereunder. Petitioner's failure to maintain complete and accurate records of his income-producing activities and his failure to produce complete and accurate records to the respondent in connection with the examination of his income tax returns for the taxable *65 years 1964, 1965, 1966, 1967, 1968, and 1969 were fraudulent with intent to evade tax. Petitioner fraudulently, and with intent to evade tax, omitted from his income tax returns for the taxable years 1964 through 1969, taxable income in the amounts set forth above. A part of the underpayment of tax required to be shown on petitioner's returns for each of the taxable years 1964 through 1969 is due to fraud. Motion for Summary Judgment
Under Rule 121, a summary adjudication may be made "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). The party opposing the motion cannot rest upon the allegations or denials in his pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d). The moving party, however, bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. ; *66 . Respondent takes the position that the facts deemed admitted under Rule 90(c) are sufficient to sustain his deficiency determinations as well as satisfy his burden of affirmatively proving fraud. Petitioner, although given the opportunity to respond to respondent's motion, has failed to do so. He has made no argument. Now, we proceed in light of the admissions before us to determine their sufficiency for purposes of summary judgment. Based on the foregoing deemed admissions, we find that respondent has satisfied his burden of proving that no genuine issue of material fact exists as to respondent's underlying deficiency determinations and that respondent is entitled to a decision with respect to his underlying deficiency determinations as a matter of law. . In addition, for the following reasons, we find that respondent has satisfied his burden with respect to the additions to tax for fraud under section 6653(b). Fraud is defined as an intentional wrong doing designed to evade tax believed to be owing. . *67 The burden of proof rests on respondent to show by clear and convincing evidence that some portion of the understatement of income for each year was due to fraud with the intent to evade tax. ; section 7454(a); Rule 142(b). Respondent must establish (1) that petitioner underpaid his taxes during each year and (2) that some part of petitioner's underpayment each year was due to fraud. . Petitioner, here, is deemed to have admitted facts which overwhelmingly establish substantial, intentional omissions of taxable income. Likewise, the admissions are replete with the requisite indicia of fraud. ;. Specifically, petitioner has admitted to not reporting substantial amounts of income and to claiming non-existent deductions and business expenses. Respondent need not prove the precise amount of underpayment resulting from fraud, but only that there is some underpayment and that some part of it is attributable to fraud. , *68 affg. . We therefore find that the facts deemed admitted under Rule 90(c) are sufficient to satisfy respondent's burden of proving that some portion of the understatement of income was due to fraud with the intent to evade tax. Accordingly, respondent's motions for summary judgment will be granted as to the deficiencies and additions to tax for fraud in the amounts and for the taxable years stated therein. An appropriate order and decision will be entered in each docket.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise noted.↩
2. Mrs. Miriam Krock filed petitions in her name with the Court to redetermine the deficiencies and additions to tax that respondent determined for the taxable years 1965-1969 and the taxable year 1964. Her cases were assigned docket No. 6935-73 for the taxable years 1965-1969 and docket No. 1097-74 for the taxable year 1964.↩
3. See footnote 7, infra.↩
4. In addition to the request for admissions, respondent served petitioner with interrogatories and with a request for production of documents by mail on June 28, 1985.Petitioner was required to serve answers or objections to respondent's interrogatories within 45 days after service of the interrogatories upon him. Rule 71(c). Thus, interrogatory answers or objections were due on or before August 12, 1985. Petitioner's responses to respondent's request for production of documents were due 30 days after service of the request upon him. Rule 72(b). Because the thirtieth calendar day was Sunday, July 28, 1985, petitioner's responses to the request for production of documents were due no later than Monday, July 29, 1985. Rule 25(a). Petitioner did not respond to respondent's interrogatories or the request for production of documents within the time provided by our Rules.↩
5. Further, we informed petitioner that neither the responses to interrogatories nor the responses to the request for production of documents were to be filed with the Court according to Rules 71(c) and 72(b). ↩
6. ue to an amendment to Rule 90 effective July 1, 1986, Rule 90(e) is now Rule 90(f). There was no substantive change in Rule 90(e), now Rule 90(f), by this amendment.↩
7. Service by mail of all papers other than the petition is complete upon mailing the paper to the party or his counsel at his last known address. The date of mailing is the date of service. Rule 21(b). Consequently, petitioner's counsel was served with respondent's first request for admissions on June 28, 1985, when respondent mailed the first request for admissions to petitioner's counsel. ↩
8. Rule 90(b) requires the original request for admissions to be filed with the Court along with a certificate of service. Rule 90(c), however, begins the 30-day time limit for responding from time of service which is the time of mailing pursuant to Rule 21(b).↩
9. See footnotes 4 and 5, supra.↩
10. The facts, set out in respondent's request for admissions, paragraphs 1-17(f), are incorporated herein by this reference.↩
11. Because petitioner sustained no long-term or short-term capital gains in 1966, the entire amount of petitioner's net long-term capital loss is a carryover to 1967.↩
12. Petitioner reported a $116,726.42 net long-term capital loss carryover from 1968 on his 1969 return.↩
13. Petitioner claimed Schedule C deductions for the commissions he purportedly paid Edward Krock Industries, Inc. See our discussion of petitioner's claimed commission expenses, supra.↩